TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture/General Crimes Sections
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2569/1785
     Facsimile: (213) 894-0142/0141
     E-mail: Victor.Rodgers@usdoj.gov
          Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>                  v.<br><br>$599,870.00 IN U.S. CURRENCY, $21,000.00 IN U.S. CURRENCY AND APPROXIMATELY 59 MISCELLANEOUS YELLOW AND WHITE COLORED COINS AND BARS,<br><br>             Defendants. | Case No.2:21-CV-07078<br><br>COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. § 981(a)(1)(A) & (C)<br><br>[FBI] |

        Plaintiff United States of America brings this claim against

defendants $599,870.00 in U.S. Currency, $21,000.00 in U.S. Currency

and Approximately 59 Miscellaneous Yellow and White Colored Coins and

Bars (collectively, the "defendants"), and alleges as follows:

JURISDICTION AND VENUE

1.   The government brings this in rem forfeiture action

pursuant to 18 U.S.C. § 981(a)(1)(A) & (C).

2.   This Court has jurisdiction over the matter under 28 U.S.C.

§§ 1345 and 1355.

3.   Venue lies in this district pursuant to 28 U.S.C. § 1395.

PERSONS AND ENTITIES

4.   The plaintiff in this action is the United States of

America.

5.   The defendants consist of assets seized by law enforcement

officers on or about March 20, 2021, at U.S. Private Vaults at 9182

Olympic Boulevard in Beverly Hills, California, and are comprised of

$599,870.00 in U.S. Currency seized from box number 1000, and

$21,000.00 in U.S. Currency and Approximately 59 Miscellaneous Yellow

and White Colored Coins and Bars seized from box number 3900.

6.   The defendants are currently in the custody of the United

States Marshals Service in this District, where they will remain

subject to this Court's jurisdiction during the pendency of this

action.

7.   The interests of Ralph DiPiero and Marion Shilling may be

adversely affected by these proceedings.

BASIS FOR FORFEITURE

Background Regarding U.S. Private Faults

8.   U.S. Private Vaults ("USPV") is a company that was in the

business of renting safe deposit boxes to customers.  By providing

and promoting total anonymity, USPV catered to and attracted

criminals who sought to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS, and law enforcement.

9.   The company's primary pitch to customers was anonymity, as reflected in its website that provided "Complete Privacy; Biometric Identification; No ID Required."  USPV also boasted in its website "Our business is one of the very few where we don't even want to know your name.  For your privacy and the security of your assets in our vault, **the less we know the better**."  This advertisement appealed to persons engaged in activities which they wished to hide from legal authorities and law-abiding financial institutions.

10.   USPV also posted on its website "Four Reasons to Store Your Gold At USPV," information designed to market the company's services, which led to many involved in criminal activities to rent boxes from USPV.  The posting asserted:

> Banks require clients to provide their social security
> number and a photo identification as a condition for
> renting a safe deposit box.  Your information is then filed
> in the bank's central data system.  This information can be
> easily accessed by government agencies (such as the IRS) or
> attorneys armed with court orders. If no one is aware you
> have a safe deposit box, the contents (your gold) are much
> safer.

By advocating a service which circumvented the IRS and persons "armed with court orders," customers engaged in illegal activity were attracted to and ultimately stored and secreted their criminal proceeds (which the government has a legitimate interest in) at USPV, instead of at banks or law-abiding financial institutions where their

1  illegal activities would more likely be uncovered.

2      11.  In the same post, "Four Reasons to Store Your Gold At

3  USPV", USPV stated:

4      As government chartered institutions, banks are now

5      required to file "suspicious activity reports." . . . U.S.

6      Private Vaults is not subject to federal banking laws and

7      would only cooperate with the government under court order.

8  By marketing services in this fashion, some persons who ultimately

9  became USPV customers, were attracted by the advertisements because

10 USPV's safe deposit box storage facilities offered them a much safer

11 place to store their illegal criminal proceeds, unlike law-abiding

12 banks, so as to eliminate their fear of apprehension by law

13 enforcement and in promotion of their illegal activities.

14     12.  Further, and in order to shield customers from having law

15 enforcement uncover their illegal activity, USPV encouraged its

16 customers pay their box rental fees in cash.  In addition, USPV

17 charged customers significantly higher prices than those charged by

18 major banks, because USPV offered something which legitimate banks do

19 not: anonymity, a place to store illegally obtained cash, tips and

20 assistance in avoiding law enforcement and a willingness to look the

21 other way with regard to all types of criminal conduct.  And one of

22 USPV's owners has gone so far as to brag about bringing to USPV

23 individuals selling marijuana and other drugs illegally, based on the

24 owner's connections, by marketing USPV as a safe place for those

25 criminal actors and potential USPV customers to store their ill-

26 gotten gains.

27     13.  Not surprisingly, because USPV's business model is designed

28 to appeal and cater to criminals, USPV has repeatedly been used by

criminals to store criminal proceeds.  Over the years, the contents of specific boxes at USPV have been forfeited because they are the proceeds of criminal activity.  For example, on July 1, 2019, officers seized $215,653 from Michael Beaver, as he was leaving USPV, and then seized an additional $1,448,700 from his USPV boxes. Records from the Employment Development Department (the "EDD"), which is the California agency to whom employers must report wages earned by their employees, showed Beaver had no legitimate employment income.  In addition, Beaver's phones revealed evidence of drug trafficking activity, and the in excess of $1.6 million funds were forfeited as proceeds of unlawful activity.

14.  On April 21, 2019, a victim was kidnapped in San Diego and brutally tortured in a warehouse, where the victim was hit with sticks and baseball bats; stripped naked; hit with a hammer on the victim's toes; and set on fire.  Allan Newman was arrested and charged with kidnapping for ransom, attempted murder, torture and aggregated mayhem relative to the beating.  The victim had been employed by a group of people who were engaged in distributing counterfeit marijuana vaping cartridges, and the group believed the victim had stolen a suitcase full of cash, which a vape cartridge customer had left at the warehouse.  A portion of the funds had been placed by the victim's ex-wife in a safe deposit box at USPV, which the ex-wife retrieved and used to pay the victim's ransom.

15.  On March 6, 2018, officers seized $101,080 and 26 gold bars from Vincent Ramos' USPV box.  Ramos was the CEO of a company that facilitated the importation, exportation and distribution, internationally, of wholesale quantities of cocaine, heroin and methamphetamine.  The currency and gold bars were forfeited, and

1  Ramos was indicted and pleaded guilty to Racketeering and Drug
2  Trafficking, in the Southern District of California.  See United
3  States v. Ramos, Case No. 18cr1404-WQH.

4       16.  In September 2016, officers seized $592,450 and $435,190,
5  respectively, from two USPV boxes of Mikhail Malykhin, an individual
6  who was the leader of an identity theft/computer intrusion fraud
7  ring.  He and others were involved in a complex scheme involving
8  altering hacked debit cards from a health insurance provider and
9  altering the codes to cash out the debit cards.  Malykhin was
10  indicted and pleaded guilty to committing access device fraud, and
11  the over $1,000,000 in funds seized from Malykhin's boxes were
12  forfeited as proceeds of the fraud and were used to pay restitution
13  to victims of Malykhin's fraud.  See United States v. Malykhin,
14  Central District of California Case No. 16cr0688-DMG.

15       17.  In November 2015, officers seized $1,543,400 from the USPV
16  box of Gerald Lebowitz, which he stated had been brought into the
17  United States illegally to avoid taxes.  However, further
18  investigation revealed that Lebowitz was part of a conspiracy to
19  distribute methaqualone, a controlled substance, and officers seized
20  over 45 kilograms of methaqualone powder and 12 canisters of the
21  chemical o-Taluidine, both chemical precursors, during the course of
22  the investigation.   The funds were forfeited as criminal proceeds.
23  See United States of America v. Lebowitz, Central District of
24  California Case No. 17cr-0053-CAS.

25       18.  On October 28, 2015, officers seized $500,000, 22 gold bars
26  and 15 gold coins from the USPV box of Cyrus Irani, who was the
27  master bookmaker and head of an illegal gambling organization that
28  operated both internet and traditional bookmaking operations, and

engaged in money laundering.  He pleaded guilty to Enterprise Corruption, and 14 others in his organization were convicted of various gambling, money laundering and enterprise corruption charges. The assets found in Irani's box were forfeited as criminal proceeds.

The Property At Issue In This Case

19.   The defendants seized from the boxes at issue in this case are an example of persons storing funds and other assets from their criminal activity at USPV, as a result of USPV's advertisements, marketing efforts and other transactions and activities, designed to induce persons to rent boxes at USPV to hide their illegal monies. The defendants seized represent the proceeds of criminal activity and were involved in money laundering activity, which therefore renders them subject to forfeiture.

20.   Law enforcement officers have conducted an investigation pertaining to DiPiero, which has connected him to an organized crime, sports betting and loan-sharking illegal operation.  During the investigation, officers obtained information showing that DiPiero is a high-level member of the organization who works with bookmakers in different parts of the United States, and receives a portion of the gambling proceeds collected by those bookmakers.  Witnesses have told law enforcement officers about DiPiero's role in the organization and DiPiero's activities in running the illegal sports book operation. DiPiero also has prior arrests and charges for gambling, money laundering, drug trafficking and conspiracy.  In addition, the funds seized from DiPiero's boxes contained indicia of illegal activity, in that they were bundled and rubber-banded.

/ / /

/ / /

1

FIRST CLAIM FOR RELIEF

2   21.  Plaintiff incorporates the allegations of paragraphs 1-20

3   above as though fully set forth herein.

4   22.  Based on the above, plaintiff alleges that the defendants

5   constitute or are derived from proceeds traceable to violations of 18

6   U.S.C. § 1955 (illegal gambling business), which is a specified

7   unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and

8   1961(1)(D).  The defendants are therefore subject to forfeiture

9   pursuant to 18 U.S.C. § 981(a)(1)(C).

10

SECOND CLAIM FOR RELIEF

11   23.  Plaintiff incorporates the allegations of paragraphs 1-20

12   above as though fully set forth herein.

13   24.  Based on the above, plaintiff alleges that the defendants

14   constitute property involved in multiple transactions or attempted

15   transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or

16   (a)(1)(B)(i), or property traceable to such property, with the

17   specified unlawful activity being violations of 18 U.S.C. § 1955.

18   The defendants are therefore subject to forfeiture pursuant to 18

19   U.S.C. § 981(a)(1)(A).

20

THIRD CLAIM FOR RELIEF

21   25.  Plaintiff incorporates the allegations of paragraphs 1-20

22   above as though fully set forth herein.

23   26.  Based on the above, plaintiff alleges that the defendants

24   constitute property involved in multiple transactions or attempted

25   transactions in violation of 18 U.S.C. § 1957(a), or property

26   traceable to such property, with the specified unlawful activity

27   being violations of 18 U.S.C. § 1955.  The defendants are therefore

28   subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

8

1    WHEREFORE, plaintiff United States of America prays:

2    (a)  that due process issue to enforce the forfeiture of the

3  defendant currency;

4    (b)  that due notice be given to all interested parties to

5  appear and show cause why forfeiture should not be decreed;

6    (c)  that this Court decree forfeiture of the defendant currency

7  to the United States of America for disposition according to law; and

8    (d)  for such other and further relief as this Court may deem

9  just and proper, together with the costs and disbursements of this

10  action.

11  Dated: September 2, 2021          TRACY L. WILKISON
                                      Acting United States Attorney
12                                    SCOTT M. GARRANGER
                                      Assistant United states Attorney
13                                    Chief, Criminal Division

14
                                      _____/s/_____
15                                    VICTOR A. RODGERS
                                      MAXWELL COLL
16                                    Assistant United States Attorneys
                                      Asset Forfeiture/General Crimes
17                                    Sections

18                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
19

20

21

22

23

24

25

26

27

28

9

<u>VERIFICATION</u>

I, Lynne Zelhart, hereby declare that:

1.   I am a Special Agent with the Federal Bureau of Investigation.

2.   I have read the above Complaint for Forfeiture and know the contents thereof.

3.   The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena.  I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 1, 2021 at Los Angeles, California.


/s/ *Lynne Zelhart*
Lynne Zelhart